1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney

2

   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  FRANK J. RIEBLI (CABN 221152)
   RITA F. LIN (CABN 236220)
5  Assistant United States Attorney
           450 Golden Gate Avenue, Box 36055
6          San Francisco, California 94102-3495
           Telephone: (415) 436-7200
7          FAX: (415) 436-7234
           Frank.Riebli@usdoj.gov
8          Rita.Lin@usdoj.gov

9  Attorneys for Plaintiff

10 GAIL SHIFMAN (CABN 147334)
   LAW OFFICE OF GAIL SHIFMAN
11 2431 Fillmore Street
   San Francisco, CA  94115
12 Telephone:    (415) 551-1500
   Facsimile:    (415) 551-1502
13 Email:        gail@shifmangroup.com

14 Attorney for Defendant RAYMUNDO DOVAL DURAN

15 ALAN DRESSLER (CABN 56916)
   LAW OFFICE OF ALAN DRESSLER
16 601 Montgomery Street, Suite 850
   San Francisco, CA 94111
17 Telephone:    (415) 421-7980
   Facsimile:    (415) 421-7021
18 Email:        alandressler@aol.com

19 Attorney for Defendant MARCELINO REYNA-CERON

20 KENYETTE JONES (CABN 194059)
   LAW OFFICE OF KENYETTE JONES
21 601 Montgomery Street, Suite 850
   San Francisco, CA 94111
22 Telephone:    (415) 788-3600
   Facsimile:    (415) 788-3601
23 Email:        kenyettejones@sbcglobal.net

24 Attorney for Defendant ELIZABETH REYNA RODRIGUEZ

25

26

27

28

   JOINT STATUS REPORT                        1
   CR 15-579 VC

1

2

3

4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

5

6

7

8

9

10

11

| UNITED STATES OF AMERICA, | ) | CASE NO. CR 15-579 VC |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JOINT STATUS STATEMENT** |
| | ) | |
| EUTIMIO REYNA CERON, et al, | ) | |
| | ) | |
| Defendants. | ) | Date: Nov. 18, 2016 |
| | ) | Time: 11:00 a.m. |
| | ) | Court: Hon. Vince Chhabria |
| | ) | |

12

13      The government and Defendants file this Joint Status Statement to advise the Court of the status

14 of the case describing the discovery production to date and review, as well as the government's

15 proposed plan to group the defendants for trial and the parties' positions. [1]

16      **I.      BACKGROUND**

17      On December 19, 2015 the grand jury returned a fourteen count indictment against eighteen

18 defendants charging several violations of 21 U.S.C. §§ 846 and 841, alleging that they participated in a

19 conspiracy to distribute heroin and methamphetamine, and that various defendants distributed or

20 possessed heroin and/or methamphetamine with the intent to distribute it.  The indictment charges

21 conduct that allegedly occurred between April 17, 2014 and December 10, 2015.  On July 19, 2016, the

22 grand jury returned a thirty-three count superseding indictment.  This indictment added two defendants

23 and additional counts of conspiracy to launder drug proceeds and an international money laundering

24 allegation.  Both indictments contain a drug forfeiture allegation.

25      The two-year investigation that gave rise to the charges in this case involved federal and state

26 law enforcement agencies, at least eight confidential informants, dozens of controlled purchases of

27

28      [1] John Jordan will specially appear on behalf of Mark Goldrosen for defendant Jose Ricardo
Chavez-Reyna.

JOINT STATUS REPORT                                        2
CR 15-579 VC

1  heroin and methamphetamine, location monitoring of telephones and vehicles, pen registers, toll record

2  analysis, physical surveillance, video surveillance, interviews, financial investigation, the use of pole

3  cameras, and wiretaps of seven phones between May and December 2015.  Those wiretaps resulted in

4  approximately 9,000 audio recordings, most of which were in Spanish.

5  **II.     DISCOVERY STATUS**

6  **A.     Government's Statement**

7  The government has produced a substantial amount of evidence in this case.  As of November 3,

8  2016, however, the government has substantially completed its production.  From the government's

9  perspective, there remain three electronic devices which the government has been unable to access

10  through ordinary forensic methods.  The government plans to conduct further testing that may require

11  the destruction of the physical devices in order to access the information stored within them.  The

12  government has notified the defense of its intent to conduct this testing and has given the defendants

13  until November 16, 2016 to request a physical examination before the phones are physically altered.

14  In order to facilitate the defendants' review of the evidence, the government has provided – with

15  each production – an excel spreadsheet contains the following fields:  Bates Beginning, Bates End,

16  Document Date, Source (i.e. where the item came from), Item Title, Description, Item Type,

17  Confidential/Non-Confidential, Date Produced, Password, Notes.  The index thus is searchable and,

18  because it is a live document, serves as a platform for the defendants to add their own fields.

19  The government has also provided a separate index of the financial records produced in this case.

20  That index, which is also in the form of an excel spreadsheet, contains a detailed description of the

21  financial records the government produced.  It too is searchable and can serve as a platform for the

22  defendants to add their own fields.  The government learned of the defense's concerns about the bates-

23  numbering of the financial records through the process of preparing this joint status statement.  The

24  government provided the documents in their current form in part because the production includes

25  searchable live documents.  The government will confer with the defense in order to resolve the

26  defense's concerns about how the documents are produced.

27  For purposes of this statement, the following dates are relevant:

28  • December 22, 2015:  The government produced a majority of the investigative reports

JOINT STATUS REPORT                                3
CR 15-579 VC

describing the investigation, including controlled purchases and surveillance and the execution of search warrants, as well as the line sheet summaries of the Title III intercepts.  The line sheet summaries were in English and were searchable.

- On January 12, 2016, the government produced the Title III intercepts for all target telephones, toll records for all of those telephones (and four other phones) and lab reports for many of the drug seizures.

- On March 2, 2016, the government produced the wiretap applications for the Title III wiretaps in this case, as well as the GPS tracker data for the vehicles tracked during this investigation and the documents and photographs related to Count Two – the charge of distribution resulting in death.  The government also produced additional reports of investigation related to the searches and seizures on December 10, 2015, the date the agents arrested most of the defendants in this case.

- On April 8, 2016, the government produced GPS data for several of the cell phones the agents tracked during the investigation.  The government produced the rest of the GPS data on June 1, 2016.

- On August 29, 2016, about one month after the grand jury added money laundering charges to the indictment, the government produced the financial records underlying those charges.  The government also produced the majority of the English-language translations of the intercepted communications.  The government produced the remaining transcripts on September 21, 2016.

- The government also produced the majority of the cell phone downloads on September 21, 2016, and produced the remaining downloads on November 3, 2016.

**B.     Defense Statement**

The government has produced approximately 28 disks and two external hard drives containing multiple terabytes of Rule 16 discovery.  This discovery includes tens of thousands of pages of traditional documents such as search warrants and documents seized pursuant thereto, bank records, employment records, California Department of Motor Vehicle records and other records pertaining to the purchase and sale of automobiles; Title III wiretap applications and 15-day reports; DEA-6

JOINT STATUS REPORT                                    4
CR 15-579 VC

1   investigative reports; DEA-7 reports containing the results of forensic examination of physical evidence;

2   and thousands of pages of wiretap line sheets.

3       The discovery also includes multiple terabytes of GPS data (location coordinates); pen register

4   data; pole camera surveillance, traditional undercover video and audio files of undercover calls and

5   meetings and jail calls. In mid-September 2016, the government advised that they would produce mirror

6   images of and extracts from numerous cell phone and other electronic devices seized from various

7   defendants in December of 2015. The data contained in this production was so voluminous that it had to

8   be placed on a multi-terabyte external hard drive.

9       On August 29, 2016, the government produced approximately 18,000 pages of Spanish/English

10  transcripts which contained translations of most of the 9000 intercepted telephone conversations. The

11  transcript for each of these 9000 conversations was produced as a single, non-searchable pdf. file. In

12  order to be able to locate transcripts for particular conversations the defense had to transmit the pdf. files

13  to an out of state data processing company for inclusion in an interactive spread sheet which had

14  previously been prepared, but only contained the mainly Spanish audio recordings and the English line-

15  sheets. An additional 675 pages of wiretap transcripts were produced shortly after September 21, 2016

16  and have been sent to the data processing company for inclusion in the spread sheet. Thus, the defense

17  expects to have a complete set of intercepted telephone conversations which link the audio files and the

18  Spanish/English transcripts shortly.

19      On October 24, 2016 the government produced an additional 15 day wiretap status reports and

20  other investigative reports and documents.

21      Since the production of the Title III wiretap recordings, the defense have been attempting to

22  locate intercepted calls which are pertinent to their client, including those calls which are referred to in

23  the Title III applications for review in contemplation of filing motions to suppress the wiretap intercepts.

24  Though the government provided line sheets and audio files regarding approximately 9000 intercepted

25  calls and eventually produced Spanish/English transcripts for intercepted conversations, locating the

26  calls pertinent to each defendant and having the ability to review those with the defendants is an arduous

27  process best facilitated by the government production of a list of pertinent calls as to each defendant.

28  That list was provided by the government just on November 8, 2016 to certain defendants reflecting

JOINT STATUS REPORT                                    5
CR 15-579 VC

1   what appears to be calls on just one of the intercepted lines and on November 14, 2016, the government

2   provided a spread sheet to the entire defense which lists 2583 calls in which the defendants were

3   intercepted.  It is not yet clear if this list is the complete list of pertinent intercepted calls for all

4   defendants.  Defendants who were target/subjects of the wiretaps, such as Eutemio and Marcelino Reyna

5   Ceron, are only listed if the defendant was intercepted during the monitoring of someone else's line.

6   Additionally, the spread sheet does not capture calls in which two persons discussed another person.

7   Finally, the spread sheet does not reference the Bates numbered transcripts which contain the

8   Spanish/English translations of the calls.

9          The defense can now, however, begin in earnest, a more expedited review process of the wiretap

10  calls, translations and related wiretap evidence with the defendants.

11                     **1.       Bank Records**

12         At the July 21, 2016 status conference the government promised to produce financial records

13  requested by Marcelino Reyna Ceron and Elizabeth Reyna Rodriguez. On August 29, 2016, the

14  government produced thousands of pages of records from numerous bank accounts, money transfer

15  services, the California Department of Motor Vehicles, and other business entities involved in the

16  purchase and sale of used automobiles at auto auctions. Unfortunately, these documents are not

17  individually Bates numbered, or otherwise formatted in a manner which would allow counsel and/or

18  forensic experts to summarize and analyze the documents in a meaningful fashion.

19         The financial records are contained in a CD and were accompanied by an index which

20  purportedly describes the records by Bates numbers.  However, each Bates number actually contains one

21  or more folders containing voluminous single pdf. files, tif. files, videos and spread sheets.  The bank

22  records are indexed as Bates numbers 5065-5090.

23         A non-exhaustive summary of the bank records reveal the following.  Bates No. 5065 contains

24  13 tif files, 5 pdf files and 2 zip files.  These files contain more than 700 pages of bank records,

25  including 300 tif. files (one page per file) involving bank records for several different accounts, which

26  are not individually Bates numbered.  An additional problem with Bates 5065, and other Bates numbers

27  containing bank records, is that there are more than 300 tif. files that appear to be a bates number, but

28  are not. For example, one of the zip files contains tif. files numerically numbered "0010001" through

1    "0010268."  To complicate matters even further, there are other tif files located in another subdirectory

2    of 5065 that have the exact same numerical name, but are different and unrelated to those in the other

3    zip file.

4        Bates No. 5077 contains five (5) pdf files and three (3) subfolders.  Each subfolder contains a pdf

5    file.  These files contain approximately 908 pages of financial records pertaining different accounts and

6    different account holders.  None of the 908 pages are bates numbered. Bates 5080 contains 45 pdf files,

7    two txt files and one dat file.  The files contain approximately 830 pages of bank records pertaining to

8    more than six different bank accounts.   None of the pages are bates numbered.

9        Bates 5079 contains 14 individual pdf files and one txt file.  The files contain approximately 350

10   pages of bank records pertaining to six different bank accounts.  None of the pages are bates numbered.

11       Bates 5082 contains ten pdf files, one txt file, one data file, and a subfolder entitled "Follow up

12   docs".  The subfolder "Follow up docs" contains 19 additional pdf files and one txt file.  Bates 5082

13   contains 294 pages of bank records for numerous bank accounts, none of which are Bates stamped.

14       In summary, four of the sixteen Bates numbered files in the government's index relating to bank

15   records contain 54 separate files representing 2,252 pages of documents which are not Bates numbered.

16                    **2.       California Dept. of Motor Vehicle Records**

17       Bates Nos. 5094 through 5100 contains 28 separate pdf. files containing 967 pages of California

18   Department of Motor Vehicle records, none of which are bates numbered.

19                    **3.       Records Re Purchase and Sale of Automobiles**

20       Bates Nos. 5104, 5107, 5108, 5110 and 5111 contain 233 separate pdf. files containing 1027

21   pages of records, 4 spread sheets and 15 jpegs, none of which are bates numbered.

22   **III.    MOTIONS**

23       **A.     Defense Statement**

24            **1.       Motions Regarding Electronic Surveillance**

25       Electronic surveillance presents a new frontier of investigation, and courts have struggled to

26   apply the Fourth Amendment to the digital realm. *See, e.g.*, *United States v. Jones*, 132 S. Ct. 945

27   (2012); *Riley v. California*, 134 S. Ct. 2473 (2014).  Beyond the standard challenges to "traditional"

28   Title III wiretap interceptions, the discovery produced in this case compels defense counsel to

1  investigate and analyze the collection and use of data the government acquired through geolocation

2  tracking and cell-site simulators.  Because this evidence is highly technical and procedurally complex,

3  counsel for the defendants in this case agree that effective representation of our clients in this case

4  mandates the assistance of a research attorney with specialized, cutting-edge knowledge about electronic

5  surveillance, and the government's use of it in criminal prosecutions.[2]

6       Prior to the preparation of the wiretap motions, it is necessary that the defense issue subpoenas

7  duces tecum to cellular service providers for data and correspondence (which requires considerable time

8  to pinpoint account numbers, IMEI numbers, date ranges, etc.); responding to motions to quash from the

9  cellular network providers which are routinely filed in response to said subpoenas; discovery motions,

10  e.g. informant identities and impeachment material; "Hemisphere" project documentation, law

11  enforcement database materials, correspondence with cell phone service providers and database record

12  keepers (i.e. NCRIC, EPIC); and data delivery records (i.e. from cell networks to government law

13  enforcement agents)

14       Additionally, defense counsel together with the assistance of the research attorney will have to

15  review cell, GPS, and other tracking data; informant impeachment materials and law enforcement

16  reports regarding informant activities, and compare the data to search warrant and Title III affidavits;

17  and draft motions to suppress CSLI/Hemisphere/CALEA/GPS Data/Search Warrants.  Upon completion

18  of this motion litigation, motions to suppress Title III intercepts will be required, which is the last step,

19  after the motions to suppress underlying data are adjudicated.

20       Defense counsel have consulted with each other and are in agreement that we will file joint

21  motions regarding electronic data and wiretap evidence to the extent that the underlying issues are the

22  same for each defendant.

23              **2.    Other Motions**

24       Defendants also anticipate filing motions to suppress evidence seized via traditional search

25  warrants, and a motion to disclose confidential informants along with the motions regarding electronic

26

27       [2] The defense has jointly agreed to retain a highly qualified individual with vast experience in this area to act as a research attorney. The costs associated with the retention of this attorney will be
28  equally shared between CJA and retained counsel.

JOINT STATUS REPORT                    8
CR 15-579 VC

1 surveillance.  There will also be motions to sever based on the government's proposed trial groupings

2 and other grounds. Their proposed trial groupings were just provided to the defense on November 14,

3 2016 and defendants reserve their right to object to the proposed groupings and to file motions to sever.[3]

4 **3.      Motion Filing Schedule**

5 To more expeditiously proceed in the pretrial motion phase of this complex case and to ensure

6 the effective representation of the defendants, the defense believes that the motion filing schedule should

7 occur in rounds and that the following filing dates for wiretap related and other motions, taking into

8 account the factors set forth in 18 U.S.C. § 3161, be scheduled as follows with corresponding dates for

9 oppositions, replies and hearing dates:

10 1.  Subpoena Duces Tecum Applications Directed Toward Service Providers - To be filed week

11 of 11/28/2016.   Anticipated Motions to Quash these subpoenas filed By Telephone Providers – To be

12 heard the week of 1/16/17. If the motions are heard in mid-January, the defense would like to receive the

13 discovery materials by early February.

14 2.  Motion for Disclosure of confidential informants (and any discovery issues that cannot be

15 resolved between the parties) and Motions to Sever - To be filed week of 1/16/17

16 3.  Motion To Suppress CSLI /Hemisphere/CALEA/GPS Data and Motions To Suppress

17 Evidence Obtained by Search Warrants (not utilizing Title III intercepts)  - To be filed week of

18 4/10/2017.

19 4.  Motions To Suppress Title III intercepts - To be filed week of 6/12/2017

20 **B.      Government's Statement**

21 The government respects the defendants' desire to pursue all available defenses, including filing

22 motions to suppress evidence.  The government proposes a shorter timeline however:  the government

23 produced the wiretap applications and supporting documents over six months ago and there are 18

24 defense attorneys to share the work of researching and writing the motion(s), seeking additional

25 evidence to support the motion and litigate preliminary motions.  For those reasons, the government

26 proposes the following:

27

28 [3] There may be separate filings from certain defendants relating to the proposed trial groupings prior to the Status Hearing.

#### 1.      Wiretap Motion

Defendants should file their motion to suppress wire evidence on February 10, 2017. The government will oppose on March 17, 2017, the defense will reply on March 24, 2017 and the Court will hear the motion on April 14, 2017.

#### 2.      Other Motions to Suppress

Defendants in Trial 2 (below) should file any other motions to suppress on the same timeline as the timeline provided, above, for the wiretap motion. Defendants in Trials 3-5 should file any other motions to suppress at least ten weeks in advance of the trial dates set for those trials, with the hearings set for one month prior to trial.

## IV.     PROPOSED TRIAL GROUPING AND TRIAL DATES

### A.      Government's Statement

The government proposes the following groupings and order for the trials in this case, as well as a timeline for setting the matters for trial:

**Trial 1**

| | |
|---|---|
| Defendants: | Juvenal Mondragon<br>Leny Romero Moya |
| Counts: | All |
| Trial Date: | February 14, 2017 |
| Length: | Three days |
| Reason: | The government proposes trying United States v. Juvenal Mondragon, et al, CR 15-134 VC first because defendants in this case are not charged in the drug distribution conspiracy in the related case, United States v. Eutimio Reyna-Ceron, et al, CR 15-579 VC, and thus this case can be tried without any of the wiretap evidence in CR 15-579 VC. That makes the presentation of evidence in this case shorter and more discreet. The government believes it is possible to try this case in three full court days. |

**Trial 2**

| | |
|---|---|
| Defendants: | Rodolfo Rivera Herrera<br>Robert Erickson |

JOINT STATUS REPORT                                     10
CR 15-579 VC

| | | |
|---|---|---|
| 1 | Counts: | Two |
| 2 | Trial Date: | April 24, 2017 |
| 3 | Length: | Three weeks |
| 4 | Reason: | Count Two involves complex but discrete issues and a limited number of |
| 5 | | defendants.  The case will involve evidence that the defendants distributed heroin |
| 6 | | that the victim, Natalie M. ultimately used, and evidence (in the form of |
| 7 | | toxicology analysis and expert opinions) that the heroin the defendants distributed |
| 8 | | was the cause of her death.  The government anticipates calling at least three |
| 9 | | expert witnesses, as well as 10-12 law enforcement officers (plus additional |
| 10 | | personnel if the defendants contest chain of custody) and 8-10 civilian witnesses |
| 11 | | in its case-in-chief. |

12 **Trial 3**

| | | |
|---|---|---|
| 13 | Defendants: | Cristino Vargas Mondragon |
| | | Brigido Rangel |
| 14 | | Julio Cesar Barbosa |
| 15 | Counts: | One, Three, Four |
| 16 | Trial Date: | July 17, 2017 |
| 17 | Length: | 2 weeks |
| 18 | Reason: | Count One relates to the defendants' involvement in the overall drug distribution |
| 19 | | conspiracy.  Counts Three and Four relate to the defendants' arrest on August 12, |
| 20 | | 2015, during which the agents seized 18.82 kilograms of black tar heroin, 1.97 |
| 21 | | kilograms of white powder heroin, and 9.77 kilograms of 99.1% pure |
| 22 | | methamphetamine from four tires in Vargas-Mondragon's garage.  The issues |
| 23 | | involved in trying these counts are not complex.  The government proposes to |
| 24 | | limit the wiretap evidence it will introduce in its case in chief to just the evidence |
| 25 | | obtained through monitoring telephone numbers 707 304 1274, 707 548 0519 and |
| 26 | | 209 988 8962. |

27 **Status Conference**

| | | |
|---|---|---|
| 28 | Date: | September 14, 2017 |

JOIN STATUS REPORT                                    11
CR 15-579 VC

1    Reason:        To assess which defendants still remain for trial and, if necessary, adjust the trial

2                   groupings proposed below for the third and fourth trials.

3    **Trial 4**

4            Defendants:      Eutimio Reyna Ceron
                              Marcelino Reyna Ceron
5                             Cornelio Reyna Ceron
                              Elizabeth Reyna Rodriguez
6                             Ramon Medina
                              Remigio Madrigal Solorio
7                             Santiago Rubio Chavez
                              Marcelino Reyna Rodriguez
8                             Eutimio Reyna Rodriguez
                              Raymundo Doval Duran
9                             Rodolfo Rivera Herrera

10           Counts:         One, Five through Fourteen and Sixteen through Thirty-Three

11           Trial Date:     November 10, 2017

12           Length:         Two months

13           Reason:         The government appreciates the Court's instruction that the trial groupings consist

14                           of "no more than four or five defendants."  The government proposes including

15                           eleven defendants in this group for the following reasons.  First, nine of the

16                           defendants in this group are members of the same distribution cell and seven of

17                           those persons are members of the same family.  They operated as a single unit to

18                           acquire process and distribute drugs and then launder the proceeds of those drug

19                           sales.  The other two defendants – Raymundo Doval Duran and Rodolfo Rivera

20                           Herrera – ran cooperating distribution cells, and are related to the Reyna-Cerons

21                           through marriage.  They shared suppliers and intelligence regarding law

22                           enforcement activities, and occasionally made joint drug purchases with the

23                           Reyna-Ceron cell.  Proving the conspiracy count against any of these defendants

24                           thus requires presentation of exactly the same evidence as against any of the

25                           others.  Severing any of them would require presentation of the same evidence

26                           multiple times.  That evidence includes significant wiretap evidence, along with

27                           evidence obtained through physical and electronic surveillance, civilian and law

28                           enforcement witnesses, expert witnesses and financial records.  Indeed, the

JOINT STATUS REPORT                              12
CR 15-579 VC

evidence of the drug conspiracy is intertwined with the evidence related to the

money laundering counts – and vice versa – because it proves that the money

flowing through the defendants' accounts was illegal drug proceeds, and the

amount of money helps establish the scope of the drug conspiracy.  Second,

depending on the outcome of Trial 2, it may not be necessary to make Rodolfo

Rivera Herrera a party to this trial or try him on the remaining counts.  Fourth, the

government is engaged in settlement discussions with several of the defendants in

this group.  It is unlikely that all of the defendants will still be in the case by the

time this group proceeds to trial.

**Trial 5**

| | | |
|---|---|---|
| Defendants: | Jaime Sandoval<br>Valentin Camacho Toledo<br>Jose Ricardo Chavez-Yanez | |
| Counts: | One and Fifteen | |
| Trial Date: | April, 2018 | |
| Length: | Two weeks | |
| Reasons: | These defendants were suppliers, or brokers for suppliers, to the distribution cells the defendants in Trial 4 operated.  Though the government would prefer to try them along with those defendants, it is also feasible to try them separately.  This trial will also involve substantial wiretap evidence. | |

**B.      Defense Statement**

The defense will need time to consider the government's trial grouping proposal in determining

whether motions to sever are appropriate.  As set out herein, the anticipated wiretap litigation appears to

put the earliest trial date in late summer/early fall 2016.  As such, Mr. Rangel will renew his motion for

severance and requests the opportunity to brief the matter and/or be heard regarding this renewed

motion.[4]  While the government has been dealing with the underlying evidence and data in this case for

---

[4] As noted at the September 20, 2016, hearing on Mr. Rangel's first motion to sever, Darlene Comstedt, counsel for Mr. Rangel, is unavailable on November 18, 2016, and thus unable to be present at the status conference on said date.  Mr. Dressler will be specially appearing on Mr. Rangel's behalf for Ms. Comstedt at said status hearing.

JOINT STATUS REPORT                                          13
CR 15-579 VC

1   years, particularly during its investigative phase, the defense has not had that same opportunity.  The

2   defense is still in the process of reviewing the voluminous discovery in this case with the defendants.

3   And, the government's proposed schedule is unrealistic based on the pretrial motion litigation still to be

4   filed all things which must occur to preserve the defendants' Sixth Amendment rights.  The defense also

5   believes the government's proposal is aggressive particularly based upon our collective experience in

6   other cases involving the type of electronic surveillance used in this case and due to the amount of work

7   required to prepare the numerous pretrial motions. Their proposed schedule doesn't take into

8   consideration the time needed for service providers to provide responsive discovery (or any litigation

9   regarding the subpoenas or if the Court is required to issue orders compelling timely performance), the

10  time needed by the government to file its responses to pretrial motions or the defense need to file replies

11  or consider  a motion to suppress GPS Data Search Warrants prior to the filing of a Motion to Suppress

12  Title III Interceptions because its drafting will need to take account of that ruling.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

JOINT STATUS REPORT                              14
CR 15-579 VC

1       As the exact motion schedule is not yet known and because it is not known whether certain

2  defendants, such as Mr. Rangel or others will be severed, the defense cannot, at this time, suggest trial

3  dates for all except for the government's suggested Trial 1.[5]  The defense objects to the trial dates

4  proposed by the government and recommends that trial dates be scheduled after severance motions are

5  heard and that trial dates be scheduled in Fall, 2017. [6]

6  DATED: November 15, 2016                Respectfully submitted,

7                                BRIAN J. STRETCH
                                United States Attorney

8

9                                    /s/
                                FRANK J. RIEBLI

10                                RITA F. LIN
                                Assistant United States Attorneys

11

12                            /s/ Frank Riebli w/ permission

13                                GAIL SHIFMAN
                                KENYETTE JONES

14                                ALAN DRESSLER

---

[5] In addition, defense counsel have a myriad of trial dates set in various cases/jurisdictions as well as some personal commitments such as prepaid vacations set at various times.  Those trial and other obligations can be discussed at the status hearing.

[6] Defense counsel Gail Shifman objects to government's suggested status hearing date of September 14, 2017 as she will be on a pre-paid vacation on this date.

JOINT STATUS REPORT                 15
CR 15-579 VC